AOC International, Proton Electronic Industrial Co., Ltd.,
Sampo Corp., and Tatung Co., plaintiffs *v.* United States, defendant

Court No. 93–06–00341

(Dated December 22, 1993)

*Willkie Farr & Gallagher (William J. Clinton, Robert H. Edwards, Jr., David E. Bond* and *Jacqueline A. Weisman)* for plaintiffs.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Michael S. Kane), Thomas H. Fine,* Attorney Advisor, Office of the Chief Counsel for Import Administration, of counsel, United States Department of Commerce, for defendant.

## Opinion

Restani, *Judge:* This matter was before the court on defendant's motion to dismiss, as well as various motions that were rendered moot by the court's dismissal of the action following oral argument.

### Background and Positions of the Parties

In this action, plaintiffs sought review of a determination by the United States Department of Commerce ("Commerce") not to conduct a changed circumstances review, under 19 U.S.C. § 1675(b) (1988), of an antidumping duty order on *Color Television Receivers, Other than Video Monitors, from Taiwan,* 49 Fed. Reg. 18,337 (Dep't Comm. 1984) (antidumping duty order). The basis for the changed circumstances claim was the lack of a domestic television producing industry. Plaintiffs focused on production, or lack thereof, of Zenith Electronics Corporation in the United States. Commerce determined not to conduct the review because in its opinion the essential issue to be addressed was the standing of Zenith Electronics Corporation as a representative of the domestic industry, an issue that was raised and decided in Zenith's favor in the context of the eighth administrative review of the antidumping duty order. *See Color Television Receivers, Except for Video Monitors, from Taiwan,* 58 Fed. Reg. 34,415, 34,416 (Dep't Comm. 1993) (final admin. results). Plaintiffs argue, however, that they seek more than to disqualify Zenith from requesting or participating in administrative reviews, which was the precise remedy sought in the eighth administrative review.[1] *See id.* Plaintiffs request, rather, a determination that there is no domestic production by Zenith at all and that therefore the antidumping duty order should be revoked in its entirety.

Defendant responds that if plaintiffs seek revocation of the antidumping duty order on the basis that no domestic industry exists, they may raise that issue at any time with the International Trade Commission ("ITC"). In other words, if there is no industry, there is no injury to a

---

[1] A challenge to the final determinations resulting from the eighth administrative review is pending before the court in another action, *Action Elecs. Co., Ltd. v. United States,* 93–07–00408.

domestic industry to be prevented by operation of the antidumping duty laws. Injury questions are within the province of ITC. *See* 19 U.S.C. § 1673 (1988) (injury is a precondition to antidumping duty liability). Revocation by Commerce based upon ITC injury reconsiderations is addressed in 19 C.F.R. 355.25(e) (1993). Decisions of ITC under 19 U.S.C. § 1675(b) (1988) are judicially reviewable pursuant to 19 U.S.C. § 1516a(a)(1) (1988) and 28 U.S.C. § 1581(c) (1988). Accordingly, defendant asserts adequate remedies exist that will result in determinations which are judicially reviewable under 19 U.S.C. § 1516a. Section 1581(c) of Title 28 provides the court jurisdiction as to such reviews. As adequate remedies exist, defendant argues, plaintiffs' alleged basis of jurisdiction, 28 U.S.C. § 1581(i) (1988), is unavailable.

Plaintiffs respond that Commerce may address the same issues, that is, under 19 C.F.R. § 353.25(d) (1993) the Secretary may revoke a determination if no interested parties exist. Plaintiffs argue that, by definition, if there is no domestic production there are no interested parties. *See* 19 U.S.C. § 1677(9)(C) (1988); 19 C.F.R. § 353.2(k)(3) (1993).

## DISCUSSION

*Jurisdiction under 19 U.S.C. § 1516(c):*

There are two potential bases for jurisdiction in this case. The first is 28 U.S.C. § 1581(c), which provides for review of determinations listed in 28 U.S.C. § 1516a. Section 1516a, however, refers only to determinations that are published in the Federal Register. Because Commerce viewed the decision challenged here as a request to reconsider its recent findings in the eighth annual review, it did not consider the determination to be a final determination that was required to be published. It also believes that the statute does not require it to publish decisions not to initiate changed circumstances reviews, except in the context of publication of the final results of an ordinary administrative review under 19 U.S.C. § 1675(a) (1988).

Which Commerce decisions are subject to the publication requirement is not particularly clear from the statute. As indicated, changed circumstances reviews are described in Section 1675(b). Section 1675(b) does not require, by its terms, that Commerce publish a determination. This contrasts with § 1675(a), which mandates the publication of determinations resulting from ordinary annual reviews. By implication, any decision that is listed in 19 U.S.C. § 1516a(a) as reviewable also must be published, as it is the date of publication that generally triggers the time limitation for filing suit provided by that section. A determination of ITC (not Commerce) under 19 U.S.C. § 1675(b) not to conduct a changed circumstances review is clearly listed as a reviewable determination in 19 U.S.C. § 1516a(a)(1). Thus, such decisions must be published, even though 19 U.S.C. § 1675(b) does not specifically provide for publication. The parallel determination by Commerce was previously listed as a reviewable determination in § 1516a(a)(1), but was eliminated from

that provision by the 1984 amendments to the statute. *See* Pub. L. No. 98–573, § 623(a)(1), 98 Stat. 2948, 3040 (1984).

The parties disagree as to whether by the 1984 amendment Congress intended to prohibit review of all Commerce determinations not to initiate changed circumstances reviews (apart from those made in the context of an annual administrative review). Defendant argues that Congress did so intend. Defendant states that decisions not to initiate a changed circumstances review outside an annual review are purely discretionary with Commerce and are always nonreviewable. It contends, moreover, that these decisions are not the "final determination[s] * * * under [19 U.S.C. §] 1675" referred to in 19 U.S.C. § 1516a(a)(2)(B)(iii). Plaintiffs argue that, to the contrary, every final determination under 19 U.S.C. § 1675, other than those listed in 19 U.S.C. § 1516a(a)(1)(B) (ITC decisions not to initiate), is reviewable because 19 U.S.C. § 1516a(a)(2)(B)(iii) so states. In other words, plaintiffs argue that defendant unreasonably limits the meaning of "final determination" in 19 U.S.C. § 1516a(a)(2)(B)(iii).

Plaintiffs further argue that perhaps Congress merely wished to change the standard of review by moving review of Commerce decisions not to initiate changed circumstances reviews, from § 1516a(a)(1), to which an arbitrary and capricious standard applies, to § 1516a(a)(2), to which a substantial evidence standard applies. *See* 19 U.S.C. § 1516a(b). The substantial evidence standard is not an impossible standard to apply to a decision not to initiate, but it is not a particularly appropriate one. Thus, it seems more likely that Congress did not intend by its change to keep both ITC and Commerce decisions not to initiate changed circumstances reviews judicially reviewable under all circumstances.

In this case, Commerce did not voluntarily publish its decision and plaintiffs did not ask the court to order ITA to publish its determination as a final determination under 19 U.S.C. § 1675, which would be necessary for 28 U.S.C. § 1581(c) jurisdiction to attach. Thus, there is no basis for 28 U.S.C. § 1581(c) jurisdiction. The above discussion is relevant, however, to plaintiffs' claim of jurisdiction under 28 U.S.C. § 1581(i) (1988).

*Jurisdiction under 28 U.S.C. § 1581(i):*

Apparently, recognizing the difficulty of squeezing itself into § 1581(c), but also recognizing the ambiguities caused by the 1984 amendment to the antidumping statute, plaintiffs grounded their claim of jurisdiction in 28 U.S.C. § 1581(i), the residual jurisdictional provision. It is admitted by all parties that the courts have narrowed the broad wording of 28 U.S.C. § 1581(i), so that jurisdiction under that section is considered out of the ordinary and only permitted where other remedies are manifestly inadequate. If plaintiffs have the right to obtain review of the substantive question and to receive appropriate remedies under other jurisdictional provisions, the remedies are not manifestly

inadequate. *See Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed. Cir. 1987), *cert. denied,* 484 U.S. 1041 (1988). Also, if Congress specifically prohibits review of certain determinations, remedies may not be considered manifestly inadequate. *See MacMillan Bloedel Ltd. v. United States,* Slip Op. 92–67, at 4 (May 8, 1992); *cf. National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1550–51 (Fed. Cir. 1988).

The court cannot say definitively that every Commerce decision not to initiate a changed circumstances review is exempt from 28 U.S.C. § 1581(i) review, but it seems fairly clear that Congress intended to insulate all but the most extraordinary decisions of this type from review on more than an annual basis. Changed circumstances relating to one company are normally addressable in a Commerce annual review, which is subject to judicial scrutiny. As noted by defendant, industry-wide questions are properly taken up by ITC. Perhaps this is why Congress felt 19 U.S.C. § 1516a(a)(1) review was not needed for Commerce determinations of the sort raised here, and thus eliminated it. The court finds that in view of the statutory change enacted by Congress, 28 U.S.C. § 1581(i) jurisdiction should attach, if at all, only upon a particularly strong showing that adequate remedies are unavailable.

*Adequacy of Remedies:*

To the extent that plaintiffs challenge Zenith's standing to request or participate in a § 1675(a) review, that issue was addressable in the eighth annual review, from which a judicially reviewable determination has arisen. Some of plaintiffs' evidence was rejected as untimely submitted, however, making that review potentially ineffective to address plaintiffs' concerns. Of course, judicial proceedings with respect to the eighth annual review will provide the appropriate remedy if the evidence was improperly rejected. Assuming that Commerce correctly rejected the evidence as untimely, plaintiffs are not helped by a claim that the remedy is inadequate as a practical matter. Merely because plaintiffs did not avail themselves of a remedy in a proper manner, does not make the remedy inadequate as a matter of law. *See Miller & Co.,* 824 F.2d at 964.

Plaintiffs allege, however, that they cannot, and could never, receive the ultimate remedy they seek, that is revocation, simply based on the eighth annual review. Revocation based on nonexistence of the domestic industry does require either an injury reconsideration by ITC or a changed circumstances review by Commerce under 19 C.F.R. § 353.22(f) (1993). This is in contrast to an annual review, which must be requested under 19 C.F.R. § 353.22(a) (1993). Nonetheless, a changed circumstances review may take place within the annual review, whether it involves simply Zenith or the remainder of the domestic industry, as well. It is up to plaintiffs to specify the scope of the review they seek.

Even though the remedy sought is revocation, rather than disqualification of a party from participating in an annual review, it is not surprising that Commerce did not treat the changed circumstances request as

something different from the challenge to standing made in the eighth annual review. If the question of standing to pursue the administrative review had been resolved in plaintiffs' favor, it would have led to a request for revocation based on lack of interested parties or lack of injury under either 19 U.S.C. § 353.25(d) or (e) (1993). Commerce makes the former determination, and ITC, the latter. In either case, finding Zenith to be a nondomestic producer is the key, and this key issue had just been decided against plaintiffs and in favor of Zenith.

There is nothing in the statute or regulations that requires Commerce to readdress an issue that has very recently been decided in the context of an annual review and to publish a decision not to reconsider the issue. If Commerce is ever required to publish separately certain decisions not to initiate changed circumstances reviews so that they become reviewable, this is not the fact situation that calls for such treatment.

Plaintiffs have the right to address the underlying issue of Zenith's U.S. production in the next annual review, or they can ask ITC to take up the issue immediately in the context of a challenge to the existence of the entire U.S. industry. The resulting decisions will be judicially reviewable. In any case, plaintiffs had an adequate forum in which to pursue the fundamental question as to the standing of Zenith and to obtain by a series of steps the remedies they seek. The results of such proceedings are also fully reviewable. The issue here is one of timing and whether Commerce may separate the times for decision-making on particular issues. Under these facts, Commerce's decision-making timetable does not render the available remedies inadequate. Thus, jurisdiction does not lie for this challenge under 28 U.S.C. § 1581(i).

This action is dismissed.