**SAMSUNG ELECTRONICS CO., LTD.,**
**Samsung Electronics America,**
**Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

and

**United Electrical Workers of America, Independent, International Brotherhood of Electrical Workers, International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, and the Industrial Union Department, AFL–CIO, Defendant–Intervenors.**

**Slip Op. 96–181.**
**Court No. 96–03–00685.**

United States Court of
International Trade.

Nov. 7, 1996.

Akin, Gump, Strauss, Hauer & Feld, L.L.P, (Warren E. Connelly and Katherine M. Ho, Washington, DC) for plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis), Mark A. Barnett, Attorney–Advisor, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Collier, Shannon, Rill & Scott, PLLC (Paul D. Cullen, Jeffrey S. Beckington and Mary T. Staley, Washington, DC) for defendant-intervenors.

## OPINION

RESTANI, Judge:

This case is before the court on plaintiffs Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s (collectively "Samsung") motion for judgment upon the agency record pursuant to USCIT Rule 56.2. Samsung contests the United States Department of Commerce's ("Commerce") rejection of Samsung's untimely requests for revocation of the antidumping order against color television receivers ("CTVs") from Korea.

## BACKGROUND

A request for revocation of antidumping duties requires, *inter alia*, three annual reviews resulting in zero or *de minimis* dumping margins. 19 C.F.R. § 353.25(a)(2). The first administrative review of Samsung's import sales resulted in a finding of more than *de minimis* margins.[1]  *Color Television Receivers from Korea*, 49 Fed.Reg. 50,-

---

1. The first administrative review of CTVs from Korea covered the period October 19, 1983 through April 30, 1984. Subsequent reviews occurred on a yearly basis.

420, 50,431 (Dep't Comm.1984) (final results of admin. rev.). In the fourth and fifth administrative reviews, Commerce found for the first time *de minimis* dumping margins.[2] *Color Television Receivers from the Republic of Korea*, 56 Fed.Reg. 12,701, 12,711 (Dep't Comm.1991) (final results of admin. rev.); *Color Television Receivers from the Republic of Korea*, 55 Fed.Reg. 26,225, 26,237 (Dep't Comm.1990) (final results of admin. rev.).

Following the two administrative reviews finding *de minimis* dumping margins, the sixth administrative review had the potential to fulfill the three year requirement for a revocation request. As the antidumping duty order of CTVs from Korea was published in April of 1984, April 1989 was the opportunity month in which Samsung could request an administrative review for the sixth review period. Samsung did not request that Commerce consider revocation of the antidumping duty order at that time.

In May 1989, Commerce published a notice of initiation of the sixth administrative review. *Color Television Receivers from the Republic of Korea*, 54 Fed.Reg. 22,465, 22,465 (Dep't Comm.1989) (initiation of antidumping and countervailing duty admin. revs.). Samsung filed a request for partial revocation of the Korean CTV antidumping order on November 12, 1993, three and one half years after initiation of the review and two and one half years after verification in the sixth review.

With respect to the seventh review period, Commerce published a notice of initiation of the administrative review on June 1, 1990. *Color Television Receivers from the Republic of Korea*, 55 Fed.Reg. 22,366, 22,366 (Dep't Comm.1990) (initiation of antidumping and countervailing duty admin. revs.).[3] Samsung did not request revocation during the anniversary month of April 1990. Instead, Samsung requested revocation of the Korean CTVs antidumping duty order on its merchandise on November 3, 1993, two and one half years after initiation of the seventh review.

In February 1995, Commerce published the preliminary results of the sixth and seventh reviews and found *de minimis* margins. *Color Television Receivers from the Republic of Korea*, 60 Fed.Reg. 9005, 9008 (Dep't Comm.1995) (prelim. results). In February 1996, Commerce published the final results of both reviews which included a finding of *de minimis* margins. *Color Television Receivers from the Republic of Korea*, 61 Fed.Reg. 4408, 4415 (Dep't Comm.1996) (final results of admin. rev.) [hereinafter "*Sixth and Seventh Administrative Reviews*"]. In both the preliminary and final results, Commerce did not consider Samsung's untimely requests for revocation.

On June 24, 1996, Commerce initiated a review pursuant to 19 C.F.R. § 353.22(f) to determine whether changed circumstances exist sufficient to warrant revocation of the antidumping order as to Samsung. *Color Television Receivers from the Republic of Korea*, 61 Fed.Reg. 32,426, 32,427 (Dep't Comm.1996) (initiation of changed circumstances rev.). In the notice of initiation, Commerce indicated that a changed circumstances review was warranted based upon "the combination of the timing of certain court decisions, the timing of certain results of administrative review in this proceeding, and the coincidence of these events with the company's decision to stop shipping from Korea...." *Id.*

On January 19, 1996, Commerce initiated an anti-circumvention inquiry to determine whether Samsung is circumventing the antidumping order by completing or assembling CTVs in Mexico and Thailand for exportation to the United States. Commerce is conduct-

2. The proceedings in these cases were stayed pending the conclusion of litigation with respect to the final results of the first administrative review. The court affirmed Commerce's remand results, which resulted in *de minimis* margins for Samsung. *Zenith Elects. Corp. v. United States*, Slip Op. 95–100, at 1, 1995 WL 330717 (CIT May 31, 1995).

3. Samsung acknowledges that the factual and legal basis for its claim regarding the seventh review are essentially the same as for the sixth review. Samsung Mem. at 3, n. 2. There does not appear to be any basis for a different result for the seventh administrative review than for the sixth administrative review. Consequently, the court does not discuss separately the seventh administrative review.

ing this review concurrent with the changed circumstances review. *Id.* A final determination has not yet been issued in either proceeding, but is expected in June 1997.

## STANDARD OF REVIEW

The standard of review for an agency's determination requires the court hold any determination unlawful if unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i) (1994); *Koyo Seiko Co. v. United States*, 17 CIT 474, 475, 840 F.Supp. 136, 138 (1993), *aff'd*, 20 F.3d 1156, 1157 (1994).

## DISCUSSION

The basic requirements for revocation of an antidumping duty order are set forth in 19 C.F.R. § 353.25(a)(2), which provides that Commerce may revoke an order, in part, if: (1) a producer sold the merchandise in issue at not less than foreign market value ("FMV") for at least three consecutive years, (2) it is not likely that the producer will in the future sell the merchandise at less than FMV, and (3) the producer agrees to the immediate reinstatement of the antidumping order if it is found to sell at less than FMV. 19 C.F.R. § 353.25(a)(2) (1996). The request must contain a certification that the producer has sold at not less than FMV during the period under review and that in the future, the manufacturer will not sell at less than FMV. 19 C.F.R. §§ 353.22(b), 353.25(b)(1).

The request must be submitted during the third annual anniversary month of the publication of an order, or during any subsequent anniversary months (e.g., fourth, fifth, etc.) if it is to be considered in the review requested that month. Commerce has interpreted this time limitation to be a mandatory, bright line requirement, *see Certain Fresh Cut Flowers from Columbia*, 56 Fed.Reg. 50,554, 50,557 (Dep't Comm.1991) (final results admin. rev.), an interpretation upheld by the Court of International Trade. *See Exportaciones Bochica/Floral v. United States*, 16 CIT 670, 671, 802 F.Supp. 447, 448 (1992), *aff'd without opinion*, 996 F.2d 317 (Fed.Cir.1993) [hereinafter *"Bochica/Floral"*].

Samsung did not submit its request for revocation during April 1989, the first anniversary month of the antidumping order following its third year of *de minimis* dumping margins, or during any subsequent anniversary month, as required by 19 C.F.R. § 353.25(b). Instead, in 1993 and 1994 Samsung submitted requests for revocation in November, which is not an anniversary month. Plaintiff concedes that its requests were untimely, but nevertheless asks that the court require Commerce to waive the time limitation set forth in the regulations and review their revocation requests.

Plaintiff essentially advances two arguments in support of its claim. First, plaintiff argues that Commerce had discretion under the regulation to waive the mandatory time requirements of 19 C.F.R. § 353.25, and that Commerce should do so in this case. Second, plaintiff argues that Commerce's prolonged delay in issuing the final results for the administrative reviews, coupled with the uncertainty resulting from the decision in *Daewoo Elecs. Co. v. United States*, 13 CIT 253, 712 F.Supp. 931 (1989), *rev'd, Daewoo Elec. Co. v. Int'l Union of Electronic, Technical, Salaried and Machine Workers*, 6 F.3d 1511 (Fed.Cir.1993), effectively prevented Samsung from timely filing the required certification for revocation.

To support its first argument, Samsung relies on two cases interpreting Commerce's discretion to waive the mandatory time requirements set forth in 19 C.F.R. § 353.31(a), which prescribes time limitations for submission of factual information: *CEMEX, S.A. v. United States*, Slip Op. 95–72, at 23, 1995 WL 251561 (CIT Apr. 24, 1995); and *Böwe–Passat v. United States*, 17 CIT 335, 338–39, 1993 WL 179269 (1993). Neither *CEMEX* nor *Böwe–Passat* addressed 19 C.F.R. § 353.25, the regulation in issue here.

The court in *Böwe–Passat* ordered Commerce to accept the plaintiff's untimely filed factual submission into the administrative record. *Böwe–Passat*, 17 CIT at 343. The court carefully circumscribed the holding by emphasizing that it is "based on and limited

to the specific circumstances of this case."[4] *Id.* The narrow holding of *Böwe–Passat* significantly undermines Samsung's reliance on it for an interpretation of a *different regulation,* in a case with markedly different facts.

As for *CEMEX,* in writing about 19 C.F.R. § 353.31(a) (*not § 353.25*), the court noted that although "the language of Commerce's regulation is mandatory, Commerce routinely accepts data after deadlines depending on the circumstances of each case." *CEMEX,* Slip Op. 95–72, at 23. In *CEMEX,* however, the court did not directly order Commerce to supplement the administrative record with untimely submissions. *Id.* at 24. Instead, the court agreed that certain information was "new" factual information that was properly excluded, and remanded to Commerce to consider whether it properly excluded other information. *Id.* Here again, Samsung's reliance on a few carefully selected phrases from the *CEMEX* decision is undermined by the actual holding of the case.

Plaintiff urges the court to read *CEMEX* and *Böwe–Passat* expansively, interpreting the time limitation set forth in 19 C.F.R. § 353.25 as a discretionary guideline that Commerce is free to waive. While one might apply, by analogy, the rationale of both cases

to 19 C.F.R. § 353.25, the court declines to do so. The burden placed on Commerce by the submission of factual information after a deadline is relatively light compared to the administrative burden imposed on Commerce by an untimely request for revocation. In response to a request for revocation, Commerce must initiate and conduct an entire investigation. *See* 19 C.F.R. § 353.25(c); *Sixth and Seventh Administrative Reviews,* 61 Fed.Reg. at 4414–15. If the plaintiff could command Commerce to conduct such an investigation at its whim rather than only once per year, Commerce's administrative efficiency would be adversely affected. *Bochica/Floral,* 16 CIT at 671, 802 F.Supp. at 448.

A more significant distinction is that in contrast to its application of 19 C.F.R. § 353.31, Commerce has not routinely accepted revocation requests under 19 C.F.R. § 353.25 after the regulatory deadline.[5] Instead, the CIT has upheld Commerce's interpretation of 19 C.F.R. § 353.25(b) as a mandatory, bright line rule requiring that a producer must submit its revocation request during the anniversary month of an antidumping duty order.[6] *Bochica/Floral,* 16 CIT at 671, 802 F.Supp. at 448.

**4.** The court limited the holding of *Böwe–Passat* to the specific facts of that case. There, the plaintiff responded to Commerce's deficiency letter in good faith. *Böwe–Passat,* 17 CIT at 339. However, Commerce did not indicate how Böwe–Passat's original response was insufficient and subsequently refused to accept untimely filed supplemental information. *Id.* The court found that Böwe–Passat could not have complied with Commerce's demands without clarification by Commerce of what information was required. *Id.* Thus, the court required Commerce to exercise its discretion to accept the supplemental information. *Id.* at 343.

**5.** The administrative determination in *Elemental Sulphur From Canada,* 56 Fed.Reg. 5391, 5391 (Dep't Comm.1991) (final results of admin. rev.) [hereinafter *"Elemental Sulphur"*], does not support the view that 19 C.F.R. § 353.25 is not a bright line test. Unlike Samsung, in *Elemental Sulphur,* the respondent filed a request for revocation during the anniversary month of the order. *Id.* The fact that the respondent in *Elemental Sulphur* filed the request a year after the third consecutive review with *de minimis* dumping margins may be support for interpreting the regulation to allow filing in an anniversary month even if there is a gap between the consecutive

years of selling at fair market value and the revocation request. Of course, even if the regulation does not provide a bright line requirement as to the year of filing, it still provides a bright line test as to the month of filing and Commerce also would retain discretion to discount stale information. Because of Samsung's failure to file in any anniversary month we need not resolve the potential conflict between *Elemental Sulphur* and Commerce's current view that any gap between the last consecutive year of fair trading and the request precludes granting of the revocation request.

**6.** Plaintiff also relies upon *Carton Closing Staples and Stapling Machines from Sweden,* 57 Fed.Reg. 4596, 4596 (Dep't Comm.1992) (determ. not to revoke) [hereinafter *"Carton Closing"*], to support the proposition that Commerce has the discretion to waive the mandatory requirements of 19 C.F.R. § 353.25. In *Carton Closing,* Commerce accepted an untimely objection to the agency's intent to revoke an antidumping order because Commerce failed to meet its own deadline for publishing notice of its intent to revoke. *Id.* This case is distinguishable from Samsung's case because in *Carton Closing* Commerce's conduct violated the explicit language of 19 C.F.R. § 353.25(d)(4)(i), a sunset provision requiring

· In *Certain Fresh Cut Flowers from Columbia*, 56 Fed.Reg. at 50,557, Commerce refused to consider a request for revocation received from Exportaciones Bochica/Floral, a Columbian flower producer, that was made after the anniversary month of the antidumping duty order. The CIT upheld this application of the regulation in *Bochica/Floral*, 16 CIT at 671, 802 F.Supp. at 448. The court cited the ITA's administrative burdens and the need for prompt completion of reviews as support for its conclusion that the mandatory requirement of filing on an anniversary month was a reasonable interpretation of the regulation deserving judicial deference. *Id.*

■ Samsung's second argument focuses on whether in April 1989 it could have filed a good faith certification accompanying its request for revocation. A certification requires the plaintiff reasonably believe that it has met the requirements for revocation.[7] *Sixth and Seventh Administrative Reviews*, 61 Fed.Reg. at 4414. Based on two facts, Samsung contends that if it had filed a request for revocation, it would have been based on mere speculation and not a reasonable belief. First, Commerce did not publish the results of the fourth and fifth administrative reviews until 1990 and 1991 respectively, well after the April 1989 anniversary month. Second, *Daewoo Elecs.* delayed the results of the sixth administrative review until 1995, six years after the period under review, by potentially altering Commerce's method of calculating antidumping duties. *See Daewoo Elecs.*, 13 CIT at 278–82, 712 F.Supp. at 954–56. Thus, Samsung contends that in April 1989, it did not have the necessary data to reasonably believe that it had *de minimis* dumping margins for the fourth, fifth and sixth review periods.

Samsung's ignorance of the outcome of the fourth and fifth administrative reviews did not prevent it from filing a certification in April 1989. As Commerce articulated in its final results for the sixth and seventh administrative reviews, the certification

is always made in advance of conducting the review, [therefore,] it reflects the respondent's best information and belief concerning its pricing behavior during the period. Although the Department had not issued preliminary results of review for periods four and five by the time the revocation request was required for period six in April of 1989, no presumption existed that Samsung had been dumping those earlier periods.... Even though Samsung could not know at the time whether it would ultimately qualify for revocation, it had a sufficient basis to make the request and could have timely done so.

*Sixth and Seventh Administrative Reviews*, 61 Fed.Reg. at 4414. In short, Samsung could have preserved its rights by filing the request for revocation in April 1989, with whatever qualifying statements were necessary.

■ Finally, even if the court were convinced that Commerce's interpretation of the regulation of the statute was unreasonable, and that it was within Commerce's discretion to waive the April filing requirement, the court must carefully consider whether such discretion was abused and whether the court should intervene at this stage. The plaintiff has been subject to *de minimis* margins for the 4th, 5th, 6th, and 7th review periods, after which it ceased exporting to the United States. Commerce has initiated both anticircumvention and changed circumstances reviews which will address whether the antidumping duty order should be revoked as to Samsung. Commerce, therefore, is presently considering revocation of the antidumping duty order, the very relief Samsung seeks in the present case, albeit somewhat later than it would have preferred. It would be unreasonable to order revocation remand results earlier than the completion of the related

---

Commerce publish a notice of intent by a specific day. Here, however, not only is Commerce acting under a different provision of the regulations, its own conduct did not violate the explicit language of 19 C.F.R. § 353.25.

7. There is some question as to whether the certification requirement in the regulation refers to

the one year period preceding the request or the three year consecutive period referred to in 19 C.F.R. § 353.25(a). *Compare* 19 C.F.R. § 353.25(a), (b) and 19 C.F.R. § 353.22(b). As a practical matter, three years of no dumping are required; thus, a circumscribed certification would not be particularly useful. *See also supra* note 5.

anticircumvention and changed circumstances reviews. Thus, little would be gained by the court's action.

In any case, the court denies Samsung's motion for judgment on the agency record as Samsung failed to file its request for revocation during the anniversary month of the antidumping duty order.

## JUDGMENT